UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


LINDA S. MILLER,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      No. 4:05CV1149 CAS
                                    )                    (TIA)
JO ANNE B. BARNHART, Commissioner   )
of Social Security,                 )
                                    )
            Defendant.              )


## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This cause is on appeal from an adverse ruling of the Social Security Administration. All

pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28

U.S.C. § 636(b) for appropriate disposition.

## I.      Procedural History

In July, 1997, Claimant Linda S. Miller filed an application for Disability Insurance

Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. (Tr. 91).[1]  In

her application for benefits, Claimant alleged that she is disabled starting on November 1, 1996,

due to disorders of her back, discogenic and degenerative, chronic lumbar pain, and vision loss in

the left eye. (Tr. 57, 63, 91). On July 13, 1998, the ALJ awarded Claimant a Period of Disability

and Disability Insurance Benefits. (Tr. 14, 91). The medical evidence in support showed

Claimant to have herniated discs at multiple levels of the lumbar spine documented in a MRI, and

_____

[1]"Tr." refers to the page of the administrative record filed by the defendant with its Answer.
(Docket No. 9/filed September 26, 2005).

Claimant to be receiving regular treatment for her back pain which significantly interfered with her abilities. (Tr. 77).

On September 1, 2003, Claimant's benefits were redetermined, and she was found no longer disabled, effective November 30, 2003. (Tr.19, 77-81, 91). At that time, Claimant alleged disability due to a heart murmur, back spasms, pain in the left shoulder, limited movement of her neck, and decreased strength in her left hand and arm. (Tr. 57). In particular, the Commissioner found the current medical evidence showed that Claimant's medical impairments and symptoms had improved, and Claimant could perform her past relevant work as a reservations clerk, starting in November, 2003. (Tr. 91). In the Explanation of Determination, Dr. Andrew Matera found that the current medical evidence shows that Claimant has not complained of back pain in over one year, and her current physical examination to be normal. (Tr. 81). Dr. Matera opined that "medical improvement has occurred as there is a decrease in medical severity" and such medical improvement "is related to the ability to do work." (Tr. 81). Dr. Matera determined that Claimant has the ability to return to her past relevant work as a reservationist inasmuch as such work is less strenuous at the light residual functional capacity. (Tr. 81).

On October 1, 2003, Claimant filed a Request for Reconsideration of Disability Cessation, alleging that her physical health had not improved and that her lack of medical insurance was the reason she had not received medical treatment. (Tr. 76). On reconsideration, the Social Security Administration denied Claimant's claims for benefits and affirmed the cessation of benefits on the basis of medical improvement. (Tr. 48-55). In relevant part, the hearing officer found the evidence reveals significant medical improvement in Claimant's impairments since the comparison point decision noting that Claimant's physical examination was essentially within normal limits

except for obesity, decrease range of motion of her shoulders, and some evidence of the Achilles reflex. (Tr. 55). Thus, the hearing officer determined that Claimant's current RFC does not prevent Claimant from returning to relevant past work as a customer service representative and/or a reservationists. (Tr. 55).

After an unfavorable reconsideration determination, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 10, 46). On June 15, 2004, a hearing was held before an Administrative Law Judge ("ALJ"). (Tr. 20-41). Claimant testified and was represented by counsel. (Id.) Thereafter, on September 28, 2004, the ALJ issued a decision finding Claimant to be no longer entitled to a Period of Disability or Disability Insurance Benefits with her entitlement ending on November 30, 2003. (Tr. 14-19). After considering the additional medical evidence submitted by Claimant, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision on May 23, 2005. (Tr. 5-6, 233-61). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.     Evidence Before the ALJ

### A.  Hearing on June 15, 2004

#### 1.  Claimant's Testimony

At the hearing on June 15, 2004, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 23-41). Claimant testified that she is forty-nine years old and her date of birth is December 28, 1954. (Tr. 25). Claimant lives in Wright City with her husband and daughter and is a high school graduate. (Tr. 25, 38). Claimant testified that she has not had medical insurance for the last two years. (Tr. 25). Claimant had been covered under her

husband's policy, but she discontinued coverage after the rates escalated. (Tr. 26). Claimant missed the deadline for Medicare. Claimant continues to receive her Social Security benefits under a hardship. (Tr. 26).

Claimant testified that she lives in pain every day. (Tr. 27). Claimant has three herniated, bulging discs, numbness on her right side, and degenerative arthritis in her upper spine and neck. (Tr. 27). Claimant testified that she cannot sit in one position for very long, because she becomes uncomfortable. (Tr. 28). Claimant does not drive, because she cannot turn her head sometimes. Claimant testified that the pain prevents her from sleeping more than two hours at night. Claimant testified that her symptoms and pain have increased since the ALJ's decision in 1998. Claimant is classified as blind in her left eye. (Tr. 28). Claimant testified that Dr. Kiddy performed surgery on her right foot in either 1998 or 1999. (Tr. 29). Although Dr. Kiddy instructed Claimant to return for additional treatment, she has not returned due to her uninsured status. Claimant testified that she experiences numbness in her right toe. (Tr. 29). Claimant testified that she started seeing Dr. Birkenmeier, a chiropractor, in the spring, and is now able to move her arm up to her shoulder whereas before she could not lift her arm. (Tr. 29-31). Dr. Birkenmeier's treatment has helped reduce Claimant's pain and numbness in her legs thereby enabling her to sleep four hours a night. (Tr. 31). Claimant testified that doctors have recommended that she lose weight, and she has lost almost forty pounds in the last two years. (Tr. 40).

Claimant testified that she is not a candidate for any operations because of the extent of her injuries. (Tr. 31). Dr. Kiddy advised Claimant that having any surgery would be too dangerous, and she should learn to live with her pain. Dr. Ellis Taylor treated Claimant with

injections to alleviate her pain. Claimant testified that because she has been uninsured for two years, she has not received any injections or taken any medications. (Tr. 31). As of July 1, Claimant will be insured through her daughter's employer because of her disabled status. (Tr. 32). Claimant takes Tylenol and Aleve to alleviate her pain and to get through the day. (Tr. 31). Claimant testified that she completed physical therapy. (Tr. 32).

As to her daily activities, Claimant testified that she is extremely careful to prevent herniating a disc. (Tr. 33). Claimant cannot lift a gallon of milk or vacuum the floor. If Claimant washes the dishes, loads the dishwasher, or does the laundry, she suffers with pain thereafter. (Tr. 33). Claimant testified that she spends fifteen to twenty minutes on one activity, but then she has to sit down and relax to alleviate her pain. (Tr. 34). Claimant testified that she in only comfortable when she is reclining, and she spends 75% of the day reclining. (Tr. 34-35). Reclining in the fetal position is most comfortable for Claimant. (Tr. 35). Humidity and rainy weather aggravates her pain. Claimant testified that during a bad day, she takes an excessive amount of Tylenol and Aleve for pain, and she cannot move without pain. (Tr. 35). On a bad day, Claimant can do nothing. (Tr. 36). Claimant testified that she has more bad days than good during a month with five to six days where she feels okay and her level of pain is a seven. (Tr. 36). Claimant testified that she does not go anywhere other than church on Sunday, because it is hard for her to sit and ride in a car for any period of time. (Tr. 37). Either her daughter or her husband drives Claimant, and her daughter drove her to the hearing. (Tr. 36-37). Claimant testified that she usually does the grocery shopping once a week or every other week. (Tr. 38).

In August or September, 2003, Claimant testified that a consultative doctor examined her for five minutes. (Tr. 36-37). Claimant stated that the doctor her stand on her toes and heels,

take ten steps forward and back, and to bend to the floor.  (Tr. 37).

### 2.  Open Record

During the hearing, the ALJ determined that the record needed to be further developed and stated that he would order an orthopedic examination of Claimant.  (Tr. 40).  A review of the record shows that the ALJ submitted additional evidence, the consultative examination performed by Dr. Jack Tippett, on July 20, 2004, for counsel's review before he issued the decision denying Claimant's claims for benefits.  (Tr. 143-53).  Counsel submitted additional evidence to the ALJ before he issued a decision denying Claimant's claims for benefits.  (Tr. 154-59).

### 3.  Forms Completed by Claimant

In the Disability Hearing Officer's Report of Disability Hearing completed on October 6, 2003, Claimant reported having to use a walker to ambulate when she experiences extreme pain. (Tr. 94-113).

## III.    Medical Records

On August 28, 2003, on referral by the Missouri Disability Determination Division, Dr. Phillip Budzenski completed an internal medicine examination.  (Tr. 203-10).  Dr. Budzenski noted that Claimant seeks disability evaluation for back pain.  (Tr. 203).  Claimant reported taking over the counter medications for pain.  (Tr. 204).  Claimant reported being able to perform basic activities of daily living and being able to ambulate approximately one hour on a flat surface.  Dr. Budzenski noted that Claimant ambulates with a normal gait and appears comfortable in the seated and supine positions.  (Tr. 204).  Examination of Claimant's cervical spine revealed no tenderness in the spinous processes or paravertebral muscle spasm.  (Tr. 205).  Dr. Budzenski noted that extension of the cervical spine to be normal to 45 degrees, and forward flexion of the

lumbosacral spine to be normal to 90 degrees and extension normal to 30 degrees. (Tr. 205). Dr. Budzenski noted that Claimant is able to walk on her toes, walk on her heels, and tandem walk, and perform a squat maneuver without difficulty. (Tr. 206). In the Impression section, Dr. Budzenski listed obesity by body mass criteria, history of back pain, history of degenerative disc disease, and history of cervical spine degenerative disc disease. (Tr. 206-07). Dr. Budzenski opined that Claimant can work an eight-hour work day, can sit with ambulation restricted to fifteen minutes every hour, and lift ten pounds continuously and twenty pounds occasionally. (Tr. 208).

On September 2 and October 23, 27, and 30, 2003, Dr. Steven Heiland, a chiropractic, treated Claimant. (Tr. 199-202).

In the Physical Residual Functional Capacity Assessment completed on September 11, 2003, Dr. Andrew Matera listed degenerative joint disease of lumbar spine and obesity as Claimant's primary diagnosis and OS blindness as other alleged impairments. (Tr. 82). Dr. Matera indicated that Claimant's exertional limitations included that Claimant could occasionally lift twenty pounds; could frequently lift ten pounds; could stand and/or walk at least two hours in an eight-hour work day; could sit for a total six hours in an eight-hour work day; and was unlimited in pushing and pulling and lifting and/or carrying. (Tr. 83). In support of his conclusions, Dr. Matera noted that currently "there appears medical improvement from CDP with increased ROM of lumbar spine, normal gait, -SLR and normal lower extremity strength." (Tr. 83). Dr. Matera noted that during her last evaluation, Claimant did not report back pain. (Tr. 83). Dr. Matera indicated that Claimant's postural limitations included that Claimant could occasionally climb, stoop, kneel, crouch, crawl, and balance. (Tr. 84). Dr. Matera further

indicated that Claimant had a visual limitations due to OS blindness limited in the left eye but no

manipulative or communicative limitations. (Tr. 85-86). Dr. Matera indicated that Claimant has

an environmental limitation regarding hazards, because her degenerative joint disease would limit

her exposure to vibrations. (Tr. 86). Dr. Matera opined that Claimant's allegations are considered

partially credible inasmuch as the alleged functional limitations are in excess of the medical file.

(Tr. 87). Likewise, Dr. Matera noted inconsistency in Claimant's statements on ADL

questionnaire and her statements to the doctor during the consultative examination on August 28,

2003. In particular, Claimant exaggerated her MRI findings to the doctor. Dr. Matera further

noted that Claimant's pain is controlled by over the counter medications. Thus, Dr. Matera

opined that all of the inconsistences noted erode Claimant's credibility. (Tr. 87). In the

Explanation of Determination dated September 11, 2003, the disability examiner concluded that

> At the CPD, the medical evidence showed the beneficiary had herniated disc and
> DDD of multiple levels of lumbar spine. She tried multiple arenas of conservative
> treatment for her pain with no real relief. She reported markedly limited ability to
> perform her ADL's due to pain. Less than sedentary RFC was done by the ALJ in
> 7/98.

> Current medical evidence shows that she has no complaints of back pain in well
> over a year. She has normal current physical exam. However, considering DDD
> of lumbar spine and complaints of pain, she would still be somewhat limited in her
> functional abilities to avoid exacerbation of her pain. However, this would not
> preclude her from returning to less strenuous work at light RFC level.

> Therefore, medical improvement has occurred as there is a decrease in medical
> severity.

> The medical improvement that has occurred is related to the ability to do work.
> The claimant has the ability to return to his [*sic*] past relevant work as
> reservationist as you described it.

(Tr. 81). The disability examiner determined Claimant not be disabled. (Tr. 81).

In the advisory Physical Residual Functional Capacity Assessment completed on November 20, 2003, Dr. Bruce Donnelly listed degenerative joint disease as Claimant's primary diagnosis, obesity as her secondary diagnosis, and blind OS as the other alleged impairment. (Tr. 66). Dr. Donnelly indicated that Claimant's exertional limitations included that Claimant could occasionally lift twenty pounds; could frequently lift ten pounds; could stand and/or walk about two hours in an eight-hour work day; could sit for a total six hours in an eight-hour work day; and was unlimited in pushing and pulling and lifting and/or carrying. (Tr. 67). In support of his conclusions, Dr. Donnelly noted that Claimant has a history of back pain and degenerative lumbar discs. Dr. Donnelly noted that Claimant reported how she could perform all basic activities of daily living and ambulate for one hour on a flat surface during the examination in August, 2003. (Tr. 67). Dr. Donnelly indicated that Claimant's postural limitations included that Claimant could frequently balance and occasionally climb, stoop, kneel, crouch and crawl due to Claimant's complaints of pain and x-ray findings. (Tr. 68). Dr. Donnelly further indicated that Claimant had a visual limitation regarding depth perception but no manipulative, communicative, or environmental limitations. (Tr. 69-70). Dr. Donnelly noted that although Claimant has a history of back problems, a recent examination revealed minimal findings. (Tr. 71). Dr. Donnelly concluded that based on the evidence, Claimant's complaint of symptoms are found to be partially credible. (Tr. 71).

In the initial visit to Dr. Jeff Birkenmeier, a chiropractor, he evaluated Claimant's pain in her neck, back, shoulders, hips, and legs. (Tr. 167). Claimant reported being unable to work and perform daily activities including vacuuming and laundry. Claimant reported taking no prescription medications but taking Tylenol and/or Ibuprofen. (Tr. 167). In the pain

questionnaire, Claimant marked her level of pain at an eight on a scale from one to ten. (Tr. 169). Dr. Birkenmeier recommended treating Claimant three times a week for eight weeks with spinal adjusting, stretching, resistance exercises, and support modalities. (Tr. 171).

In a Narrative Report, Dr. Birkenmeier noted how Claimant sought treatment for muscle and joint pain on April 24, 2004. (Tr. 164). Dr. Birkenmeier noted that Claimant's multiple advanced imaging studies reveal various degenerative processes such as degenerative disc and joint disease, disc bulges, and herniations. Dr. Birkenmeier further noted that Claimant's presentation is consistent with muscle spasm and trigger points in muscles. Dr. Birkenmeier opined that Claimant is showing progressive improvement in her symptomatology and muscular balance, and he anticipates continued improvement based on her course of treatment. Dr. Birkenmeier opined that Claimant is not capable of safely performing work, but he expects that she may one day return to work in a restricted, light duty position. Dr. Birkenmeier determined that Claimant will stabilize with a steady decline in symptomatology over the next few months. (Tr. 164).

The radiology reports dated April 22, 2004, show postural changes of Claimant's cervical spine and spondylosis, C4, C5 and C6 disc levels. (Tr. 165). With respect to Claimant's thoracic spine, the report revealed postural changes, costotransverse arthrosis, and spondylosis to varying degrees. (Tr. 165). With respect to Claimant's lumbar spine, the report revealed postural changes, facet arthrosis, L4-L5 and L5-S1, and spondylosis, T12-L5 disc levels. (Tr. 166).

Dr. Birkenmeier treated Claimant through May 22, 2004. (Tr. 173). On May 12, 2004, Dr. Birkenmeier opined that Claimant is showing progressive improvement in her symtomatology and muscular balance, and he anticipated continued improvement during her course of treatment

barring any unforeseen exacerbations of her symptoms. (Tr. 176). Dr. Birkenmeier opined that

Claimant is not capable of safely performing work.[2] (Tr. 176).

On June 7, 2004, in response to questions regarding Claimant's impairments, Dr.

Birkenmeier noted in his prognosis that Claimant "is responding to care positively." (Tr. 162).

Dr. Birkenmeier listed fatigue, unstable walking, numbness, stiffness, and pain as Claimant's

symptoms. (Tr. 162). Dr. Birkenmeier noted that Claimant does not use a cane or other assistive

device while standing or walking. (Tr. 163). Dr. Birkenmeier opined that Claimant can

frequently lift less than ten pounds and occasionally lift twenty pounds. (Tr. 163).

On July 9, 2004, Dr. Jason VanGundy first treated Claimant at the St. Charles Clinic

Medical Group for her chronic thoracic lumbar pain. (Tr. 242). Claimant reported being unable

to take medications for treatment, because her stomach is too sensitive. Claimant's neurological

and neck examinations were normal. (Tr. 242).

On July 20, 2004, on referral by Disability Determinations, Dr. Jack Tippett, completed an

orthopedic evaluation. (Tr. 145-53). Claimant reported low back pain, right leg numbness,

difficulty sleeping, neck and right arm pain as her chief complaints. (Tr. 145). Examination

revealed mild limitation of motion in Claimant's neck and tenderness in the lumbar region. (Tr.

146). In the Clinical Impressions, Dr. Tippet listed chronic low back pain, chronic neck pain, and

obesity. (Tr. 146-47). In the Medical Source Statement of Ability to Do Work-Related Activities

(Physical), Dr. Tippet indicated that Claimant's exertional limitations included that Claimant could

---

[2]"A medical source opinion that an applicant is 'disabled' or 'unable to work' ... involves an
issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which
the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005),
citing Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

occasionally lift ten pounds; could stand and/or walk at least two hours in an eight-hour work day; was unlimited in her ability to sit; and was limited in pushing and pulling. (Tr. 148-49).

On July 21, 2004, on referral by Dr. VanGundy, Dr. Sophie Liu, a podiatrist, treated Claimant for discomfort in her feet. (Tr. 257). Claimant reported taking Darvocet for her discomfort and not being a good surgical candidate for her back problems. Dr. Liu applied a removable pad to support Claimant's metatarsal phalangeal joint in her right foot. Dr. Liu opined that if Claimant responds well to the taping, she would discuss custom inserts with Claimant. (Tr. 257).

In a return visit to the St. Charles Clinic Medical Group on July 30, 2004, Claimant reported increased lower back pain and Dr. Birkenmeier's refusal to continue her treatment. (Tr. 241). Examination revealed tender back muscles and spasms in the back. Dr. VanGundy prescribed Percocet for pain relief and a muscle relaxer, Skelaxin. Dr. VanGundy ordered a MRI of Claimant's lower spine to take place prior to her neurosurgery evaluation. (Tr. 241). The MRI of Claimant's lumbar spine revealed degenerative changes of the intervertebral disc with disc desiccation and loss of disc volume. (Tr. 255). Dr. Raymond Jablonski opined that Claimant has a small focal disc protrusion to the right of midline slightly indenting the inferior margin of the thecal sac and a shallow broad-based posterior disc protrusion L4-L5. (Tr. 256). The MRI of Claimant's cervical spine revealed minimal diffuse disc bulge with associated hypertrophic spurring. (Tr. 252). In the Impression section, Dr. David Pohl, a radiologist, noted mild degenerative changes with possible muscle spasm and no other abnormality identified. (Tr. 253). The bone scan revealed minimally increased activity in several synovial joints, unremarkable for Claimant's age. (Tr. 254).

Dr. Liu treated Claimant in follow-up visits on August 4 and 11, 2004. (Tr. 257-58). In an office record dated August 4, 2004, Dr. Stanley Martin, a neurologist, evaluated Claimant on referral by Dr. VanGundy for further evaluation of her low back pain. (Tr. 259-60). Claimant reported not having much medical care the last several years due to lack of medical insurance. (Tr. 259). Dr. Martin observed that Claimant ambulates with a normal gait and was able to walk on heels, toes and in tandem without difficulty. (Tr. 260). Dr. Martin reviewed the most recent MRI of Claimant's lumbar spine and noted that the MRI revealed a right L1-2 disc bulge without significant foraminal or central stenosis, a mild central and right-sided disc bulge at L5-S1, and no significant stenosis, spondylolisthesis, or other abnormality. Dr. Martin opined that he did not believe Claimant to be a good surgical candidate for her lumbar spine based on the recent MRI. Dr. Martin further opined that he was not inclined to suggest lumbar myelography, but recommended a total body bone scan and a MRI of Claimant's cervical spine in order to assess her chronic complaints of neck pain. (Tr. 260).

On August 12, 2004, Claimant returned to discuss the MRI results and bone scan. (Tr. 240). Claimant reported seeing Dr. Martin, who completed the bone scan and recommended no surgery. As treatment for her lower back pain, Dr. VanGundy recommended that Claimant see Dr. Ellis Taylor for an epidural steroid injection as soon as possible. Dr. VanGundy continued Claimant's Percocet prescription. (Tr. 240).

On August 24, 2004, Dr. Taylor performed a right L4 transforaminal epidural steroid injection at St. Joseph Health Center to alleviate Claimant's right sided lumbar radicular pain. (Tr. 247-51). Dr. Taylor noted how Claimant had not been seen in two years although she reported experiencing pain during that time. (Tr. 250).

In the follow-up visit on August 30, 2004, Dr. VanGundy checked Claimant's wart in her belly button. (Tr. 239). Claimant reported seeing Dr. Taylor and having the epidural steroid injection performed at disc 4 and feeling better and being "able to get by with just Tylenol and Aleve." (Tr. 239).

On September 7, 2004, Claimant returned to the St. Charles Clinic Medical Group reporting a cough and rash and the doctor prescribed Doxycycline. (Tr. 238). Claimant returned two days later reporting new rash spots and mild fatigue. (Tr. 237). Dr. VanGundy ordered Claimant to continue the Doxycycline prescription and prescribed Allegra as treatment of her rash. (Tr. 237). Claimant reported continued and increased lower back pain on October 8, 2004.[3] (Tr. 236). Claimant reported being able to do one load of laundry and experiencing pain if she sits in one place. Claimant does not like taking medication and relying on the pills. Dr. VanGundy continued her Percocet prescription and a trial of Lidoderm patch. (Tr. 236, 245).

On November 30, 2004, Claimant reported continued problems with rash and cough. (Tr. 235). On December 10, 2005, Claimant reported experiencing increased back pain after helping friends move boxes. (Tr. 234). Dr. VanGundy prescribed Trazadone and continued her Percocet prescription. (Tr. 234). On January 7, 2005, Dr. VanGundy recommended that Claimant see Dr. Taylor again and continued her Percocet and Lidoderm patch prescriptions. (Tr. 233, 246).

On February 3, 2005, Dr. Ann Wieman, a podiatrist, evaluated Claimant for her back pain

---

[3]The medical records in the transcript include treatment notes from October 8, 2004 to February 3, 2005. (Tr. 233-36, 245-46, 261). These records were not before the ALJ. The Court must consider these additional records in determining whether the ALJ's decision was supported by substantial evidence. Frankl v. Shalala, 47 F.3d 935, 939 (8th Cir. 1995); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). The Appeals Council considered these records in its decision denying review of the ALJ's decision. (Tr. 3-8).

and recommended custom orthotics and Lidoderm patches to alleviate Claimant's pain. (Tr. 261).

## IV. The ALJ's Decision

The ALJ found that Claimant was awarded a Period of Disability and Disability Insurance Benefits on July 13, 1998, the comparison point decision. (Tr. 18). The ALJ determined that Claimant has experienced medical improvement in her condition and that no exception to medical improvement applies. The ALJ further found that Claimant has not engaged in substantial gainful activity since July, 1998. (Tr. 18). The ALJ found that the medical evidence establishes that Claimant has back and neck strain, but that she does not have any impairment or combination of impairments which meet or equal the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found that Claimant's allegations of disabling symptoms precluding all substantial gainful activity are not consistent with the evidence and are not credible. (Tr. 18).

The ALJ opined that Claimant has the residual functional capacity to perform work except work involving lifting over ten pounds and standing or walking more than two hours in an eight-hour work day. (Tr. 19). The ALJ determined that Claimant cannot perform work requiring bilateral vision or good depth perception although she has 20/20 vision in her right eye, she should not have concentrated exposure to workplace hazards. The ALJ found that Claimant is able to perform her past relevant work as a reservations clerk. Thus, the ALJ determined Claimant is no longer under a disability, and her disability ceased September 1, 2003. (Tr. 19).

## V. Discussion

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If he is, then he is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If he is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, he is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, he is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds

to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will he be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The claimant's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the
      claimant's impairments.

6.    The testimony of vocational experts when required which
      is based upon a proper hypothetical question which sets forth the
      claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the

record as a whole because the ALJ's finding with respect to Claimant's residual functional capacity

is not supported by substantial evidence in light of the records submitted to the Appeals Council

supporting Claimant's inability to perform competitive work.

A.    Medical Improvement Sequential Evaluation Standard

Claimant argues that the ALJ's decision is not supported by substantial evidence on the

record as a whole because the ALJ failed to properly consider the Commissioner's statutory

burden of proof and the medical improvement sequential evaluation standard in evaluating her

claim.

The continuing disability review process is a sequential analysis prescribed in 20 C.F.R. §

404.1594(f).  The regulations for determining whether a claimant's disability has ceased may

involve up to eight steps in which the Commissioner must determine  (1) whether the claimant is

currently engaging in substantial gainful activity,  (2)  if not, whether the disability continues

because the claimant's impairments meet or equal the severity of a listed impairment,  (3)  whether

there has been a medical improvement, whether it is related to the claimant's ability to work,  (5)

if there has been no medical improvement or if the medical improvement is not related to the

claimant's ability to work, whether any exception applies, (6) if there is medical improvement and

it is shown to be related to the claimant's ability to work, whether all of the claimant's current

impairments in combination are severe, (7) if the current impairment or combination of

impairments is severe, whether the claimant has the residual functional capacity to perform any of

his past relevant work activity, and (8) if the claimant is unable to do work performed in the past,

whether the claimant can perform other work. 20 C.F.R. §404. 1594(f).

The ALJ first determined that Claimant has not been engaged in substantial gainful work

activity. In the next step, the ALJ concluded that "claimant's impairments are severe (at least in

combination) ... since they are more than slight abnormalities having more than a minimal effect on

the ability to work, but they do not meet or equal in duration or severity the criteria established

under the appropriate listings Appendix 1, Part 404, Subpart P." (Tr. 15). The ALJ continued in

the sequential analysis and determined that there was medical improvement in Claimant's

impairments as demonstrated by her failure to seek regular and sustained medical treatment for her

back, lack of strong pain medication, Claimant's normal examination findings by Dr. Budzenski,

Claimant's reporting her ability to walk one hour and perform basic activities of daily living, and

Claimant's own testimony regarding her daily activities. (Tr. 15-17). Next, the ALJ found that

Claimant's medical improvement was related to her ability to work and, and that as of September

1, 2003, Claimant could perform her past relevant work. Specifically, the ALJ concluded that

Claimant has the capacity:

> to perform work except for work that involves lifting over ten pounds or standing
> and walking more than two hours in an eight-hour workday. The claimant cannot
> perform work that requires bilateral vision or good depth perception. She has
> 20/20 vision in her right eye and can avoid workplace hazards, but should not have
> concentrated exposure to such hazards. The medical evidence does not establish

the existence of any other persistent, significant, and adverse limitation of function due to any other ailment.

(Tr. 18). Finally, the ALJ determined that Claimant could perform her past relevant work as a reservations clerk inasmuch as performance of such work would not be precluded by her residual functional capacity assessment. (Tr. 18).

The ALJ based his decision on two principal factors. First, the ALJ noted that Claimant's back pain had improved and that Claimant received minimal, current treatment for her back problems only taking over-the-counter medications for relief of her symptoms. In particular, the ALJ noted that at the time of the comparison point decision, Claimant was limited to sitting no more than one hour due to her back condition, but the MRI in March 2001 revealed no significant changes and that Claimant's lumbar spine had stabilized and the current medical evidence reveals only minimal treatment for back problems. Likewise, a consultative examination showed Claimant to have an increased range of motion of her lumbar spine and a normal gait. Claimant reported to a hearing officer her ability to sit for two hours, and Dr. Tippett determined that Claimant's ability to sit is unaffected by her back condition. The undersigned finds the record supports the ALJ's finding of medical improvement based on lack of treatment and lack of strong pain relief medication. Second, the ALJ found persuasive the fact that Claimant was able to perform basic activities of daily living. The ALJ believed these activities are inconsistent with an inability to perform even sedentary work. Thus, the undersigned finds that the ALJ's decision is supported by substantial evidence on the record as a whole and that the ALJ properly considered the Commissioner's statutory burden of proof and the medical improvement sequential evaluation standard in evaluating Claimant's claim.

Claimant further contends that the records submitted and considered by the Appeals Council would have changed the ALJ's decision inasmuch as the ALJ discredited her reports of severe back pain due to her lack of treatment. Although Claimant argues she could not afford more frequent medical treatment due to lack of finances and insurance, the record is devoid of any evidence suggesting that Claimant sought any treatment offered to indigents. See Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992) (holding the mere use of nonprescription pain medication is inconsistent with complaints of disabling pain); Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992)(finding it is inconsistent with the degree of pain and disability asserted where no evidence exists that claimant attempted to find any low cost medical treatment for alleged pain and disability). In particular, the ALJ noted that

> there is no evidence that the claimant was ever refused treatment or medication for any reason, including insufficient funds. Further, the record as a whole indicates that the claimant has had adequate access to health care resources. The claimant has been eligible for Medicare through her entitlement to Disability Insurance Benefits and thus, could have received medical care, if desired. Any allegation of an inability to afford treatment or medication would not be credible.

(Tr. 17). Thus, the undersigned finds the record is devoid of any evidence showing that Claimant had been denied medical treatment or access to prescription pain medications on account of financial constraints. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (finding the absence of evidence showing denial of medical treatment due to financial reasons relevant to the credibility determination regarding the claimant's failure to take pain medication); Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994).

Likewise, the records submitted to the Appeals Council further substantiate the ALJ's finding of medical improvement. The Appeals Council considered these records in its decision

denying review of the ALJ's decision. (Tr. 3-8). The Court must consider these additional records in determining whether the ALJ's decision was supported by substantial evidence. Frankl v. Shalala, 47 F.3d 935, 939 (8th Cir. 1995); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). The additional medical records show Claimant to have received conservative treatment for her back pain. Indeed, after an epidural steroid injection, Claimant reported feeling better and being "able to get by with just Tylenol and Aleve." (Tr. 239). In addition, the most recent MRI revealed only a small focal disc protrusion, but no disc extrusions or spinal stenosis.

Further, Claimant's contention that Dr. Tippett would have restricted her to an RFC of less than sedentary work if he had reviewed the current medical records is without merit. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (while medical source opinions are considered in assessing RFC, final RFC determination is left to the ALJ). It is the responsibility of the ALJ to assess a claimant's RFC based on all of the evidence, including medical records, the opinions of treating and examining physicians, as well as the Claimant's own statements regarding his limitations. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d at 779). An ALJ must begin his assessment of a claimant's RFC with an evaluation of the credibility of the claimant. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). In making a credibility determination, an ALJ may discount subjective complaints if they are inconsistent with the record as a whole. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). In Polaski, the Eighth Circuit set out factors for an ALJ to consider when determining the credibility of a claimant's subjective complaints. The ALJ must consider all of the evidence presented, including the claimant's prior work record and observations by third parties and treating and examining physicians as to:

1. the claimant's daily activities;

2. the duration, frequency and intensity of the pain;

3. any precipitating and aggravating factors;

4. dosage, effectiveness and side effects of medication; and

5. any functional restrictions.

Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

The ALJ's determination of the Claimant's RFC is supported by substantial evidence in the record. As discussed above, the ALJ properly evaluated the medical evidence in the record. The ALJ listed facts from the record regarding each of the Polaski factors that reflected upon the Claimant's ability to perform her past relevant work. Further, the ALJ pointed out other inconsistencies in the record that tended to militate against the claimant's credibility. Those included the claimant's minimal, current treatment for back problems, her normal daily activities, her exaggeration regarding the level of back pain, and the discrepancies in her testimony. Based

on the ALJ's analysis of the medical evidence and the Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that the Claimant retains a RFC as determined by the ALJ.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Browning, 958 F2d at 821. Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that Claimant's complaint be dismissed with prejudice.

The parties are advised that they have eleven days in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal the questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).


Dated this  27th  day of July, 2006.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005), *citing* Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).